United States District Court
Eastern District of New York

1:18-cv-02745

Josh Berger individually and on behalf of all others
similarly situated

Plaintiff

- against -

Complaint

Eden Creamery, LLC

Defendant

The above-named plaintiff individually and on behalf of all others similarly situated, by

attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff,

which are based on personal knowledge:

1.     Eden Creamery, LLC ("defendant") manufactures, distributes, markets, labels and

sells and sells light ice cream products under the "Halo Top" brand.[1]

2.     Founded in 2012, Halo Top is one of the fastest growing consumer products to

emerge in the last ten years.

3.     Its 2016 sales exceeded $60 million, an increase of 21,000 percent over three-years.[2]

4.     In 2017, Halo Top became the top selling ice cream product, overtaking industry

stalwarts like Ben & Jerry's and Breyers, owned by Unilever and Nestle, respectively.

5.     The Products are available in numerous flavors and sold in one pint containers.

6.     The common representations include the brand and flavor name in an arc above a

graphic of a melting scoop of ice cream.

---

[1] Defendant sells non-dairy desserts under the Halo Top brand, and the non-dairy products are included because certain of the allegations are based on ingredients present in the dairy and non-dairy products.
[2] Kaitlyn Wang, *How This Upstart Ice Cream Company Began Outselling Ben & Jerry's and Haagen-Dazs*, Inc.com (Aug. 16, 2017); Cathy Siegner, *Food Disruptor of the Year: Halo Top*, FoodDive.com (Dec. 4, 2017); Angelica LaVito, *The Future of Ice Cream Looks a lot like Halo Top*, CNBC.com (Jun. 29, 2017).



7.     Self-described as a "100% digitally native brand," Halo Top successfully uses social media and digital marketing to connect directly with its target customers through colorful and irreverent images and comments.[3]



---

[3] Sherri Cheng, *The Future is Halo Top: How Halo Top Disrupted the Ice Cream Industry Using Social Media*, ISYS6621 (Nov. 10, 2017); Tyler Cameron, *Halo Top Ice Cream: All-Natural and All-Digital*, Temple University Fox School of Business (Mar. 8, 2017); Facebook, Twitter and Instagram (clockwise).



8.     Defendant purchases the AdWords "Halo Top" and "Halo Top Flavors" on Google and designed ads shown to persons who enter those terms.

9.     The images below show that when someone types those terms into Google, they will see ads designed by defendant which identifies the Products as "Halo Top Ice Cream" and "America's #1 Ice Cream."





10.    All the above representations of the Products as ice cream are misleading because it is, if anything, light ice cream, a distinct product type.

11.    The brand name "Halo Top" is misleading because consumers often associate the word "Halo" with the color yellow, consistent with common dictionary definition which refers to it as a disk or circle of light surrounding or above the head of a saint to represent their holiness.

12.    Consumers also know that yellow is the color associated with butter and cream, because of the milk produced by pasture-raised and forage-eating cows.

13.    These images reinforce consumers' expectations that the Products will be ice cream, as opposed to the purported light ice cream.

14.    Ice cream has a standard of identity which requires it not contain less than ten percent milkfat.[4]

15.    Federal regulations allow for a food to use the name of a standardized food – "ice cream" – in its name, though deviate from that standard in a manner described by an expressed nutrient content claim.[5]

---

[4] 21 C.F.R. § 135.110
[5] 21 C.F.R. § 130.10

16.    Federal law requires the identity statement or product name "light ice cream," to be one of the principal features on the principal display panel of the label and that it be in bold type, a size reasonably related to the most prominent printed matter on the front label and in a line generally parallel to the base on which the package rests as it is designed to be displayed.[6]

17.    The use of "light" to identify the Products is a "relative claim" because it characterizes the caloric and/or fat content of the food compared to an appropriate reference food.[7]

18.    The relevant reference food must be indicated immediately adjacent to the most prominent claim on the front label.[8]

19.    The purpose of these requirements is to prevent consumers from being deceived as to what they are purchasing.

20.    The Products do not comply with the requirements because "light ice cream" is (1) present in a miniscule font, (2) off to the lower right of the label, away from the brand name and flavor, (3) in a color pattern which causes it to be difficult to see based on the background color, (4) in an area of the container prone to ice or condensed water obstructing it and (5) no reference foods are indicated next to the "light ice cream" text nor anywhere else on the label.

21.    By failing to comply with relevant laws and regulations for labeling and identifying a product purported to be "light ice cream," coupled with the extra-label digital representations and marketing campaign which describe and identify the Products as "ice cream," reasonable consumers are not aware they are purchasing a "light ice cream" product.

22.    Reasonable consumers are accustomed to seeing prominent and legally required declarations that a product is "light ice cream" where the product does not comply with the

---

[6] 21 C.F.R. § 101.3
[7] 21 C.F.R. § 101.56
[8] 21 C.F.R. § 101.13

standard of identity for "ice cream."

23.     This expectation is reinforced by numerous light ice cream products on the market.

 

24.     In the 1990s, the FDA removed the standard of identity for "ice milk" and allowed products to be named "ice cream," modified with an express nutrient content claim.

25.     However, the ice cream products still had to comply with the ingredient requirements in the standard of identity.

26.     The substitute or modified ice cream products were permitted to deviate from the noningredient provisions of the standard of identity if the product possessed performance and other characteristics, such as physical properties, flavor characteristics, functional properties – similar to those of the standardized food.

27.     The Products diverge from the performance and other characteristics of ice cream due in part to the presence of inulin and erythritol and their effects on the Products.

28.     Erythritol is a sugar alcohol of small molecular size (1/3 of sucrose), resulting in a threefold of freezing point depression factor.

29.     This causes an ice cream product to be chilled to lower temperatures to achieve the

desired texture.

30. Moreover, erythritol has a stronger tendency to crystallize after freezing which hardens the texture

31. Inulin has a high degree of polymerization and long chain length, when sheared in water or milk.

32. This contributes to the formation of microcrystals, and results in hardness.

33. The other ingredients are not present in the amounts sufficient to counteract this hardness, resulting in a product which is incompatible with the properties of ice cream modified by an express nutrient content claim.

34. The Products' mouthfeel and texture is dissimilar to light ice cream products and inconsistent with the requirements of law.

35. The Products' claims of "All Natural" and "No Artificial Sweeteners" are false and misleading due to the presence of artificial and synthetic ingredients, such as erythritol.[9]

    <u>Supplemental Panel</u>                                      <u>Ingredient List</u>

---

[9] Vegetable glycerin is also an artificial ingredient.



36.    Erythritol exists naturally in select fruits and vegetables, though it is commercially produced from sugars and starch.

37.    Reasonable consumers, the FDA, and Congress, understand "synthetic" to be a synonym for "artificial."

38.    "Synthetic" is commonly defined as refer to a substance that is formulated or manufactured through a chemical process or intervention which chemically alters a substance extracted from naturally occurring sources, such as plants, animals, or minerals, excluding substances created by naturally occurring processes.

39.    Though erythritol *can be* produced through fermentation – a natural process – of glucose, its commercial production entails fermenting glucose derived from enzymatic hydrolysis of wheat or corn with trichosporonoides megachiliensis.

40.    After the fermentation process is complete, the broth is heated to kill the production

organism, dead cells are filtered out and the erythritol is separated.

41.     The erythritol is then purified by ion exchange resin, activated charcoal, ultrafiltration and crystallization, resulting in a fine crystalline version of erythritol.

42.     Excluding tax, the Products cost no less than $4.99, a premium price compared to other similar products.

<u>Jurisdiction and Venue</u>

43.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

44.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

45.     This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

46.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

47.     A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Class Allegations</u>

48.     The classes consist of (1) all consumers in all states and (2) all consumers in New York State who purchased any Products bearing any actionable representations during the statutes of limitation periods.

49.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.

50.     The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

51.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

52.    Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

53.    Plaintiff is an adequate representative because his/her interests do not conflict with other members.

54.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

55.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

56.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

57.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Parties</u>

58.    Plaintiff is a citizen of Queens County, New York.

59.    Defendant is a California limited liability with a principal place of business in Los Angeles, California and upon information and belief, no member thereof is a citizen of this state.

60.    In 2017, plaintiff purchased the Product(s) for no less than $6.99 per Product(s), excluding tax, at a store within this District.

61.    Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

<u>Violations of New York General Business Law §§ 349 & 350</u>

62.    Plaintiff incorporates by references all preceding paragraphs.

63.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

64.    Plaintiff desired to purchase ice cream and believed that he/she did so based on the representations of defendant.

65.    Defendant's representations are false, deceptive and misleading for the reasons described herein.

66.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have without getting all they bargained for.

<u>Negligent Misrepresentation</u>

67.    Plaintiff incorporates by references all preceding paragraphs.

68.    Defendant misrepresented the composition of the Products by describing and identifying them as "ice cream" and intentionally placing the term "light ice cream" on the label in a way that consumers would not notice or recognize it, and if they did, it would be insufficient to counteract the pervasive marketing campaign in which the Products are touted as "ice cream."

69.    Defendant had a duty to disclose, in a manner prescribed by law, that its Products were not ice cream, but a separate product type.

70.    This duty extends beyond the front label to wherever the Products are represented.

71.    At the time of the representations, defendant knew or should have known same were false or misleading, or made them without knowledge of their truth or veracity.

72.    Defendant negligently misrepresented and/or negligently omitted material facts.

73.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

74.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

Breach of Express Warranty and Implied Warranty of Merchantability

75.   Plaintiff incorporates by references all preceding paragraphs.

76.   Defendant manufactures and sells frozen dairy dessert products purporting to consist of ingredients in amounts and in a proportion which is consistent with ice cream.

77.   Defendant warranted to plaintiff and class members that the Products were ice cream when they were not.

78.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

79.   Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

Fraud

80.   Plaintiff incorporates by references all preceding paragraphs.

81.   Defendant's purpose was to mislead consumers who seek the indulgence of ice cream as opposed to just another light ice cream made with artificial ingredients.

82.   Defendant's intent was to distinguish its Products in the marketplace amongst the numerous other companies selling "better for you" ice cream/frozen dairy dessert products.

83.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have otherwise, entitling them to damages.

Unjust Enrichment

84.   Plaintiff incorporates by references all preceding paragraphs.

85.   Defendant obtained benefits and monies because the Products were not as

represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant(s) to correct its/their practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   May 9, 2018

Respectfully submitted,

Levin-Epstein & Associates, P.C.
/s/Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
spencer@spencersheehan.com

1:18-cv-02745
United States District Court
Eastern District of New York

Josh Berger individually and on behalf of all others similarly situated

Plaintiff

- against -

Eden Creamery, LLC

Defendant(s)

# Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza # 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  May 9, 2018

/s/ Joshua Levin-Epstein
Joshua Levin-Epstein